IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| OTIS ARLEN CHAPMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:03-CV-240-F |
| | ) | WO |
| | ) | |
| TERRANCE MCDONNELL, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION AND PROCEDURAL HISTORY

Otis Arlen Chapman ("Chapman"), a state inmate, filed this 28 U.S.C. § 2254 petition

for habeas corpus relief on March 3, 2003, challenging convictions for first degree rape and

first degree sodomy imposed upon him by the Circuit Court of Houston County, Alabama,

on December 14, 2000.[1]

Chapman filed a direct appeal of his convictions in which he "argue[d] that the trial

court's refusal to allow him to present evidence of the victim's alleged extramarital affairs

was an unconstitutional application of Rule 412 [of the Alabama Rules of Evidence,

Alabama's "rape shield" law, formerly § 12-21-203, *Ala. Code* 1975] because, he says, it

violated his constitutional right to due process of law, namely, to confront his accuser

through cross-examination and to present a defense." *O.A.C. v. State*, 851 So.2d 146, 147

---

[1]The victim of these crimes was Chapman's estranged wife.

(Ala.Cr.App. 2002).  On April 26, 2002, the Alabama Court of Criminal Appeals affirmed

Chapman's rape and sodomy convictions.  *Id*.  The relevant portion of this decision reads as

follows:

> The evidence introduced at the trial indicated, in pertinent part, that the
> appellant cut the telephone line to the victim's house, broke open the door, and
> entered the house, where he cursed, threatened, raped, sodomized, and severely
> beat the victim.  The appellant admitted to cutting the telephone line, to
> breaking into the victim's house, to striking the victim repeatedly with his open
> hand, and to having vaginal intercourse with the victim.  However, the
> appellant disputed certain aspects of the victim's testimony, including her
> testimony that the intercourse was nonconsensual and that he had sodomized
> her during the assault.

> The appellant presents only one issue on appeal:  he argues that the trial court
> erred in not allowing him to present evidence indicating that the victim had
> had extramarital affairs because, he says, those extramarital affairs were the
> motive behind the victim's making false rape and sodomy allegations against
> him.

> Before trial, the State made an oral motion in limine, pursuant to Alabama's
> "rape-shield" law, formerly § 12-21-203, Ala.Code 1975, now Rule 412,
> Ala.R.Evid., to prevent defense counsel from questioning the victim about any
> extramarital affairs and to prevent the appellant, if he chose to testify, from
> testifying as to whether the victim had had sexual relationships with anyone
> other than him while she and the appellant were married. In opposition to the
> motion, the appellant argued that the rape-shield law should not apply to a
> husband and wife, and that to prevent him from cross-examining the victim,
> and from testifying himself, about the victim's alleged extramarital affairs
> would prevent him from presenting his defense-i.e., that the victim had made
> up the allegations of rape and sodomy in order to "get him out of the house to
> have him incarcerated" so that she could obtain custody of their children and
> continue with her affairs unhindered. (R. 9.) The trial court granted the State's
> motion in limine.

> During the trial, the appellant asked the court to reconsider its grant of the
> State's motion. In addition to his previous arguments, the appellant argued that

2

evidence of the victim's extramarital affairs would be admissible in relation to the assault charge because, he said, it tended to show his mental state at the time of the crimes; specifically, he argued that he had been provoked into assaulting the victim when he learned of her extramarital affairs. The appellant then made an offer of proof regarding the evidence he wanted to present. The appellant testified that on the day of the crimes, the victim admitted to him that she had had extramarital affairs with two different men. He denied that he was beating the victim when she made the statements. However, the appellant admitted that during the victim's deposition in connection with their divorce proceedings, she stated that she had admitted to having extramarital affairs only because the appellant was beating her at the time. As part of the proffer, the victim testified that on the day of the crimes she told the appellant that she had had extramarital affairs with two men because the appellant was beating her and had threatened to kill her if she did not confirm the names of the people he thought she was having an affair with. The victim stated that the appellant suggested the names of two men, only one of which she recognized. After the offer of proof, the trial court again granted the State's motion in limine.

The appellant argues that the trial court's refusal to allow him to present evidence of the victim's alleged extramarital affairs was an unconstitutional application of Rule 412 because, he says, it violated his constitutional right to due process of law, namely, to confront his accuser through cross-examination and to present a defense.

Rule 412 provides, in pertinent part:
> "(b) In any prosecution for criminal sexual conduct or for assault with intent to commit, attempt to commit, or conspiracy to commit criminal sexual conduct, evidence relating to the past sexual behavior of the complaining witness ⋯ shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or of other witnesses, except as otherwise provided in this rule.
> "(c) In any prosecution for criminal sexual conduct, evidence relating to the past sexual behavior of the complaining witness shall be introduced if the court, following the procedure described in section (d) of this rule, finds that such past sexual behavior directly involved the participation of the accused."

We note, initially, that this Court has repeatedly rejected constitutional challenges to Alabama's rape-shield law. See, e.g., *Mitchell v. State,* 593 So.2d

176, 177 (Ala.Crim.App.1991); *Fairchild v. State,* 505 So.2d 1265, 1269-70 (Ala.Crim.App.1986); and *Hall v. State,* 500 So.2d 1282, 1286-87 (Ala.Crim.App.1986); see also *Ex parte Dennis,* 730 So.2d 138, 140 (Ala.1999).

However, in *Dennis,* the Alabama Supreme Court held that Rule 412 does not necessarily preclude all evidence of the past sexual behavior of the victim. In *Dennis,* the appellant was convicted of the first-degree rape of his then 11-year-old daughter. Testifying for the prosecution, a medical doctor "stated unequivocally that, in his opinion, [the victim's] condition was caused by recurrent penetration rather than by a one-time occurrence."730 So.2d at 139. In an attempt to rebut that testimony and to establish his innocence, the appellant sought to introduce evidence indicating that someone else had had sexual intercourse with the victim. Specifically, the appellant sought to introduce testimony from C.M., who testified out of the presence of the jury that she had seen another adult male engaging in sexual contact-and possibly intercourse-with the victim. The trial court ruled that C.M.'s testimony was inadmissible under Rule 412 because either it was not probative or its prejudicial effect and tendency to confuse the jury substantially outweighed any probative value it might have. The Alabama Supreme Court upheld the trial court's ruling that the evidence was inadmissible, finding, among other things, that the prejudicial effect of the evidence outweighed its probative value. However, in doing so, the Court noted the following:

> "[W]e conclude that to read Rule 412 as requiring an absolute exclusion of all evidence of past sexual activity between the victim and third persons could, in some cases, violate a criminal defendant's constitutional rights. *See* Charles W. Gamble, *McElroy's Alabama Evidence,* § 32.01, p. 143 (5th ed. 1996) ('It would appear, however, that such an absolute exclusion would be inapplicable when to enforce it would violate a criminal defendant's constitutional rights.'). Therefore, we hold that *when Rule 412 is applied to preclude the admission of particular exculpatory evidence, the constitutionality of its application is to be determined on a case-by-case basis. Accord Tague v. Richards,* 3 F.3d 1133, 1137 (7th Cir.1993). To the extent that cases previously decided by this Court or the Court of Criminal Appeals are contrary to this holding, they are overruled.
>
> "....
>
> "··· *[O]ther states and the federal courts, perhaps anticipating a constitutional argument similar to Dennis's, have made express*

*exceptions permitting the introduction of evidence of the victim's sexual history where it is offered to rebut or to explain away scientific or medical evidence offered by the prosecution in a rape case. See* Fed.R.Evid. 412····

"Moreover, the exception in Rule 412, Fed.R.Evid., was apparently included in the federal rule because of the outrage over this State's now infamous prosecutions of the 'Scottsboro nine' in the 1930s. *See* 21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5388, pp. 590-598 (1980) (hereinafter 'Wright & Graham'). In fact, the exception in the federal rule is known as the 'Scottsboro exception,' or a recognition of the 'Scottsboro rebuttal.' *Id.* at 590-91. The trials of the Scottsboro nine serve as an excellent reminder of the need for such an exception.

"In the 'Scottsboro cases,' nine black men were accused of raping two white women on a freight train while it was traveling through northern Alabama. A key piece of circumstantial evidence offered on behalf of the prosecution in the defendants' first trial was medical testimony indicating that small amounts of semen had been found in the vagina of each woman. The defendants attempted to offer evidence in rebuttal to prove that these women had had sex the night before the alleged rapes, and, therefore, that the defendants were not the source of the semen. This rebuttal evidence was important because the small amount and the nonmotile condition of the semen found in the women was inconsistent with their account of a 'gang rape' that the women had alleged had occurred on the day they were examined, and because the only other evidence in the trial was the testimony of the alleged victims. The trial court, however, excluded the rebuttal evidence on its own motion and scathingly chastised the defendants' lawyer for attempting to introduce it. Several of the defendants were later found guilty. Some of the defendants' convictions were overturned, and other defendants were released when it was later determined that the women were lying about the rape to cover up for their own 'hoboing.' ···

" *We agree with the other jurisdictions that the 'Scottsboro exception' is not only wise, but is constitutionally required in some cases in which the prosecution offers evidence to show that a physical injury or condition of the victim indicates that the defendant committed the offense of rape. To the extent that cases previously decided by this Court or the Court of Criminal Appeals are contrary to this holding, they are overruled.*

" *Of course, the 'Scottsboro rebuttal' evidence would not be relevant*

5

> *in a prosecution in which the defendant claims that the victim consented to intercourse, because, in such a case, the defendant admits to being the source of the physical condition. Also, the evidence is admissible only to rebut physical evidence offered by the prosecution; it is not freely admissible by the defendant. In addition, the evidence offered by the defendant to rebut the prosecution's evidence cannot be 'reputation' or 'opinion' evidence that would be prohibited by Rule 412, Ala.R.Evid., and it must satisfy the other applicable rules of evidence."*
>
> *Id.* at 141-42 (emphasis added).

In *Ex parte Griffin,* 790 So.2d 351 (Ala.2000), the Alabama Supreme Court, addressing a different issue, stated:

> "The United States Supreme Court has held that a defendant has a right to put on a defense and that that right includes the opportunity to present evidence proving that another person committed the offense for which he has been charged. See *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). However, *this right is not absolute; instead, the trial court will have to consider the admissibility of such evidence in conjunction with other legitimate interests involved in the trial process. Chambers,* 410 U.S. at 295; see also *Guam v. Ignacio,* 10 F.3d 608 (9th Cir.1993). As a result, the trial court is presented with a balancing test in order to determine whether the evidence of a third party's culpability is properly admissible."
>
> 790 So.2d at 353 (emphasis added). In *Griffin,* the question was whether the appellant should have been permitted to introduce hearsay evidence tending to show that someone else had pleaded guilty to committing the crime for which the appellant was on trial. The Supreme Court answered the question in the affirmative, concluding that the appellant's constitutional right to present a defense superseded the hearsay rule.

Similarly, in *Adams v. State,* 821 So.2d 227 (Ala.Crim.App.), cert. denied, 821 So.2d 227 (Ala.2001), this Court held that the trial court had unconstitutionally prevented the appellant from presenting a defense. In *Adams,* the appellant was pulled over because the light that illuminated her tag was not working. The arresting officer took the appellant's driver's license information and then placed the appellant in the back of his patrol car because he believed she was a "flight risk." *Id.* at 228. After determining that the appellant's driver's license

had been suspended, the arresting officer removed the appellant from his patrol car and had her stand on the sidewalk while he removed his backseat and searched his patrol car. He claimed to have discovered a bag of crack cocaine, and the appellant was charged with possession of a controlled substance. At trial, in an attempt to show that she had been set up and targeted by the police, the appellant sought to introduce evidence indicating, among other things, that approximately three months before the traffic stop, she had filed a rape complaint against another police officer who worked in the same precinct with the arresting officer. The trial court granted the State's motion in limine to exclude this evidence. This Court reversed, holding that the trial court had abused its discretion and had deprived the defendant of her right to present a defense:

> " 'The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that "are essential to due process of law in a fair adversary process." *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975). The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony:
>
> " ' "A person's right to reasonable notice of a charge against him, and *an opportunity to be heard in his defense*-a right to his day in court-are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." (Emphasis added [in *Rock*].) *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948).
>
> " ' *See also Ferguson v. Georgia,* [365 U.S. 570, 602, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961) ] (Clark, J., concurring) (Fourteenth Amendment secures "right of a criminal defendant to choose between silence and testifying in his own behalf").
>
> " 'The right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call "witnesses in his favor," a right that is guaranteed in the criminal courts of the States by the Fourteenth Amendment. *Washington v. Texas,* 388 U.S. 14, 17-19, 87 S.Ct. 1920, 1922-1923, 18 L.Ed.2d 1019 (1967). Logically included in the accused's right to call witnesses whose testimony is "material and favorable to his defense," *United States v. Valenzuela-Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982), is a right to testify himself, should he decide it is in his favor to do so. In fact, the most important witness for the defense

7

in many criminal cases is the defendant himself. There is no justification today for a rule that denies an accused the opportunity to offer his own testimony. Like the truthfulness of other witnesses, the defendant's veracity, which was the concern behind the original common-law rule, can be tested adequately by cross-examination. *See generally* Westen, *The Compulsory Process Clause,* 73 Mich. L.Rev. 71, 119-120 (1974).

" 'Moreover, in *Faretta v. California,* 422 U.S., at 819, 95 S.Ct., at 2533, the Court recognized that the Sixth Amendment

" ' "grants to the accused *personally* the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' " (Emphasis added [in *Rock*].)

" 'Even more fundamental to a personal defense than the right of self-representation, which was found to be "necessarily implied by the structure of the Amendment," *ibid.,* is an accused's right to present his own version of events in his own words. A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness.

" '....

" 'Just as a State may not apply an arbitrary rule of competence to exclude a material defense witness from taking the stand, it also may not apply a rule of evidence that permits a witness to take the stand, but arbitrarily exclude material portions of his testimony····

" ' *Of course, the right to present relevant testimony is not without limitation. The right "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.*" [ *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).]' "

821 So.2d at 234-235, quoting *Rock v. Arkansas,* 483 U.S. 44, 51-52, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (last emphasis added).

The common theme running throughout the Alabama Supreme Court's opinions in *Griffin* and *Dennis,* and this Court's recent opinion in *Adams,* is the necessity of applying a balancing test. In determining whether the exclusion of evidence violates an accused's constitutional right to present a defense, the trial court and this Court must balance the right of an accused to present a defense against other interests in the trial process. In this case, we must

balance the right of the appellant to present his defense that the accusations against him were false against the policy of this State to protect victims of sexual crimes from being " 'harass[ed] and humiliat[ed]' " in attempts to " 'divert the attention of the jury to issues not relevant to the controversy.' " *Moseley v. State,* 448 So.2d 450, 456 (Ala.Crim.App.1984), quoting *People v. Cornes,* 80 Ill.App.3d 166, 175, 35 Ill.Dec. 818, 825, 399 N.E.2d 1346, 1353 (1980).

We find no abuse of the trial court's discretion in preventing the appellant from questioning the victim about whether she had had extramarital affairs or from testifying himself that the victim had admitted to him that she had had extramarital affairs. In this respect, we note that the appellant did not proffer evidence to "rebut physical evidence offered by the prosecution," as discussed in *Dennis,* and he did not proffer evidence suggesting that a third party had committed the charged offenses, as was the situation in *Griffin.* Moreover, the victim testified that she told the appellant she had had affairs with two men only because the appellant was beating her at the time and had threatened to kill her if she did not confirm the names of the people he thought she was having an affair with. The appellant denied that he was beating the victim when she made the statement. The victim further testified that the appellant suggested the names of two men, only one of whom she recognized. The appellant denied suggesting any names to the victim. However, no evidence was proffered as to whether one of the men, G.K. (whose name was provided either by the victim, with no suggestion from the appellant, or by the appellant, depending on which version of the events is believed) even exists, and no evidence was proffered as to whether the two men alleged by the appellant to have engaged in extramarital affairs with the victim actually did so. Likewise, the appellant offered no explanation as to what efforts, if any, he had made to identify and locate either man for questioning. Therefore, with the record in this posture, we conclude that the appellant failed to make the necessary threshold showing that the evidence he sought to introduce was sufficiently probative with respect to his claimed defense, so as to tip the balance in favor of admitting the evidence on the basis of his constitutional right to present a defense. The Alabama Supreme Court noted in both *Dennis* and *Griffin* that not in every case will the defendant's right to present his defense be paramount. In *Griffin,* the Court specifically stated that the constitutional right to present a defense "will supersede [the hearsay rule] only in those cases that ⋯ have a *probative* alternative theory of culpability and not an alternative theory that is merely speculative and meant only to confuse the jury." 790 So.2d at 355. The testimony proffered by the appellant with respect to the rape

and sodomy charges was speculative, at best. In our view, this kind of inconclusive evidence that, in effect, tends to be confusing and to raise more questions than it answers, falls squarely within the protective policy considerations of the rape-shield law-to protect victims of sexual crimes from being harassed and humiliated in an attempt to divert the attention of the jury to issues not relevant to the controversy. Furthermore, the victim's testimony on cross-examination would clearly have been detrimental to the appellant in that she would have testified that she had stated that she was having extramarital affairs only because she was being severely beaten at the time she made the statement.

The appellant relies on *Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988), as support for his claim that evidence of the victim's alleged extramarital affairs should have been admitted to show a motive for her making allegedly false allegations. In *Olden,* the United States Supreme Court held that the appellant should have been permitted to question the victim of the rape as to whether she was living with a man at the time of the trial in order to show that she may have had a motive to lie about the rape in order to protect that relationship. However, the evidence the appellant  sought to introduce in *Olden,* unlike the evidence proffered in the present case, was undisputed and clearly probative with respect to the victim's credibility. We also note the appellant's reliance on *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In *Davis,* like *Olden,* the United States Supreme Court was required to balance the petitioner's constitutional right to confrontation (cross-examination) against the State of Alaska's policy of protecting a juvenile offender. In *Davis,* the witness's juvenile record was undisputed and clearly probative with respect to the witness's possible bias against the petitioner. Based on the particular circumstances presented, the Court struck the balance in favor of the petitioner's right to cross-examination, stating:

> "Whatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record-if the prosecution insisted on using him to make its case-is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness."
>
> 415 U.S. at 319, 94 S.Ct. 1105.

Although *Olden* and *Davis* are similar to the present case in the sense that they illustrate the tension between the right of confrontation and a state's policy of protecting a witness, they are distinguishable, we think, based upon the

strength of the evidence that was proffered by the accused. We find neither *Olden* nor *Davis* to control the present case.

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in limiting the cross-examination of the victim and in restricting the appellant's testimony with respect to the victim's statements concerning extramarital affairs. We hold, therefore, that the trial court did not err in granting the State's motion in limine.

The judgment of the trial court is affirmed.

*O.A.C. v. State*, 851 So.2d at 146-153.

Chapman filed the instant 28 U.S.C. § 2254 petition on March 3, 2003. In this federal habeas petition, Chapman again challenges the trial court's application of Rule 412, *Alabama Rules of Evidence*, to exclude evidence indicating that the victim had engaged in "adulterous affairs [which] was relevant to an evaluation of her motives for making the allegations against Chapman." *Petition for Habeas Corpus Relief* at 3-4.

## II.  DISCUSSION

In their answer, the respondents assert that Chapman's claim challenging the trial court's decision to exclude evidence of extramarital affairs by the victim entitles him to no relief in this court as the state courts properly adjudicated this claim on the merits. *See Williams v. Taylor*, 529 U.S. 362, 404-405, 120 S.Ct. 495, 1518- 1523 (2000). As support for this assertion, the respondents maintain that the decision of the Alabama Court of Criminal Appeals on this issue was not contrary to or an unreasonable application of federal law nor an unreasonable determination of the facts in light of the evidence presented to the state courts. *Respondents' Answer - Court Doc. No. 5* at 7-10. In his response to the answer,

11

Chapman argues to the contrary. *Petitioner's Response to Answer - Court Doc. No. 7* at 10-11.

Upon review of the § 2254 petition, the answer of the respondents and Chapman's response to the answer, the court concludes that no evidentiary hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

The petitioner's request for federal habeas relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act. *Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518 (2000); *Price v. Vincent*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."). Under the requisite provisions of 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams*, 529 U.S. at 412-413 (2000), the Supreme Court held that:

> Under the "contrary to" clause a federal court may grant the writ

> if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a
> case differently than this Court has on a set of materially
> indistinguishable facts.   Under the "unreasonable application"
> clause, a federal habeas court may grant the writ if the state
> court identifies the correct governing legal principle from this
> Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

The Court explained that habeas relief is appropriate when a petitioner demonstrates

"that a decision by a state court is 'contrary to' . . . clearly established [Supreme Court] law

if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's]

cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision

of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court]

precedent.'  *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389

(2000)."  *Price*, 538 U.S. at 640, 123 S.Ct. at 1853 (2003).  Additionally, federal review in

a habeas action "is limited to whether the state court's decision was objectively unreasonable

in the light of clearly established federal law.  *Williams,* [529 U.S. at 409],120 S.Ct. at 1521."

*Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831,

835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the

'unreasonable application' standard only if the state court's application of clearly established

federal law was 'objectively unreasonable.'").  A federal district court is not to decide "the

correctness *per se* . . .  of the state court decision" but only the "objective reasonableness"

of such decision.  *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001).  Moreover, "an

*unreasonable* application of federal law is different from an *incorrect* application of federal

law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original). "Under §
2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the
writ simply because that court concludes in its independent judgment that the relevant state-
court decision applied clearly established federal law erroneously or incorrectly. Rather, that
application must also be unreasonable." 529 U.S. at 411, 120 S.Ct. at 1522.

Federal district courts are likewise directed to determine whether the state court based
its findings on "an unreasonable determination of the facts in light of the evidence presented
in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of
fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of
rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §
2254(e)(1). However, even when the state court addresses a question of law, this court is not
authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of §
2254(d)." *Price*, 538 U.S. at 639, 123 S.Ct. at 1852. The Supreme Court admonishes that
such evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. §
2254(d) . . ." 538 U.S. at 636, 123 S.Ct. at 1851.      The record establishes that the state
courts addressed the merits of Chapman's challenge to the evidentiary ruling. On direct
appeal, the Alabama Court of Criminal Appeals adjudicated this claim adversely to the
petitioner on the merits. Specifically, after lengthy analyses of both state and federal law,
including relevant decisions of the United States Supreme, and upon application of the

pertinent balancing test,[2] the appellate court found "no abuse of the trial court's discretion in preventing the [petitioner] from questioning the victim about whether she had had extramarital affairs or from testifying himself that the victim had admitted to him that she had had extramarital affairs." *O.A.C. v. State*, 851 So.2d at 152. In making this determination, the Alabama Court of Criminal Appeals reasoned as follows:

> . . . [T]he appellant did not proffer evidence to "rebut physical evidence offered by the prosecution," . . . and he did not proffer evidence suggesting that a third party had committed the charged offenses . . . Moreover, the victim testified that she told the appellant she had had affairs with two men only because the appellant was beating her at the time and had threatened to kill her if she did not confirm the names of the people he thought she was having an affair with. The appellant denied that he was beating the victim when she made the statement. The victim further testified that the appellant suggested the names of two men, only one of whom she recognized. The appellant denied suggesting any names to the victim. However, no evidence was proffered as to whether one of the men, G.K. (whose name was provided either by the victim, with no suggestion from the appellant, or by the appellant, depending on which version of the events is believed) even exists, and no evidence was proffered as to whether the two men alleged by the appellant to have engaged in extramarital affairs with the victim actually did so. Likewise, the appellant offered no explanation as to what efforts, if any, he had made to identify and locate either man for questioning. Therefore, no evidence was proffered as to whether one of the men, G.K. (whose name was provided either by the victim, with no suggestion from the appellant, or by the appellant, with the record in this posture, we conclude that the appellant failed to make the necessary threshold showing that the evidence he sought to introduce was sufficiently probative with respect to his claimed defense, so as to tip the balance in favor of admitting the evidence on the basis of his constitutional right to present a defense. The Alabama Supreme Court noted in both *Dennis* and *Griffin* that not in every case will the defendant's right to present his defense be paramount. In *Griffin,* the Court specifically stated that the constitutional right to present a defense "will supersede [the hearsay rule] only in those cases that

---

[2]"In determining whether the exclusion of evidence violates an accused's constitutional right to present a defense, the trial court and this Court must balance . . . the right of the [petitioner] to present his defense . . . against the policy of this State to protect victims of sexual crimes from being '"harassed and humiliated"' in attempts to '"divert the attention of the jury to issues not relevant to the controversy."'" *O.A.C. v. State*, 851 So.2d at 151 (citation omitted).

··· have a *probative* alternative theory of culpability and not an alternative theory that is merely speculative and meant only to confuse the jury." 790 So.2d at 355. The testimony proffered by the appellant with respect to the rape and sodomy charges was speculative, at best. In our view, this kind of inconclusive evidence that, in effect, tends to be confusing and to raise more questions than it answers, falls squarely within the protective policy considerations of the rape-shield law-to protect victims of sexual crimes from being harassed and humiliated in an attempt to divert the attention of the jury to issues not relevant to the controversy. Furthermore, the victim's testimony on cross-examination would clearly have been detrimental to the appellant in that she would have testified that she had stated that she was having extramarital affairs only because she was being severely beaten at the time she made the statement.

The appellant relies on *Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988), as support for his claim that evidence of the victim's alleged extramarital affairs should have been admitted to show a motive for her making allegedly false allegations. In *Olden,* the United States Supreme Court held that the appellant should have been permitted to question the victim of the rape as to whether she was living with a man at the time of the trial in order to show that she may have had a motive to lie about the rape in order to protect that relationship. However, the evidence the appellant sought to introduce in *Olden,* unlike the evidence proffered in the present case, was undisputed and clearly probative with respect to the victim's credibility. We also note the appellant's reliance on *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In *Davis,* like *Olden,* the United States Supreme Court was required to balance the petitioner's constitutional right to confrontation (cross-examination) against the State of Alaska's policy of protecting a juvenile offender. In *Davis,* the witness's juvenile record was undisputed and clearly probative with respect to the witness's possible bias against the petitioner. Based on the particular circumstances presented, the Court struck the balance in favor of the petitioner's right to cross-examination, stating:

> "Whatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record-if the prosecution insisted on using him to make its case-is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness."
>
> 415 U.S. at 319, 94 S.Ct. 1105.

Although *Olden* and *Davis* are similar to the present case in the sense that they illustrate the tension between the right of confrontation and a state's policy of protecting a witness, they are distinguishable, we think, based upon the strength of the evidence that was proffered by the accused. We find neither *Olden* nor *Davis* to control the present case.

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in limiting the cross-examination of the victim and in restricting the appellant's testimony with respect to the victim's statements concerning extramarital affairs. We hold, therefore, that the trial court did not err in granting the State's motion in limine.

*O.A.C. v. State*, 851 So.2d at 152-153.  Chapman filed an application for rehearing which the appellate court denied on June 21, 2002.  On December 13, 2002, the Alabama Supreme Court likewise denied Chapman's petition for writ of certiorari.  This Court must therefore review the instant claim for habeas corpus relief in accordance with the directives contained in 28 U.S.C. § 2254(d)(1) and (2).  *Price*, 538 U.S. at 638-639, 123 S.Ct. at 1852 (2003); *Williams*, 529 U.S. at 402, 120 S.Ct. at 1518.

In denying Chapman relief on his evidentiary claim, the Alabama Court of Criminal Appeals did not apply "a rule that contradicts the governing law set forth in [Supreme Court] cases" nor did the state court "confront[] a set of facts . . . materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrive[] at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 405-406, 120 S.Ct. 1519-1520.  This court will therefore assess whether the state court's rejection of Chapman's claim "resulted in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

17

The Alabama Court of Criminal Appeals applied decisions of the United States Supreme Court and determined that Chapman failed to establish that the trial court erred in not allowing the introduction of evidence with respect to the victim's alleged extramarital affairs. This court's inquiry is limited to "whether the state court's application of clearly established federal law was objectively reasonable." *Williams*, 529 U.S. at 409, 120 S.Ct. at 1521. Upon thorough review of the record in this case, it is clear that the state appellate court's rejection of Chapman's claim was objectively reasonable. This decision likewise constituted a reasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2). Chapman is therefore due no relief from this court.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Otis Arlen Chapman be denied and that this case be dismissed with prejudice. It is further

ORDERED that on or before June 30, 2005 the parties shall file objections to the said Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the

18

Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).   *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).   *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.)

      Done this  17th  day of June, 2005.

                                      **/s/ Delores R. Boyd**
                                      DELORES R. BOYD
                                      UNITED STATES MAGISTRATE JUDGE